[Nos. 69976-3; 70071-1.   En Banc.]
Argued May 24, 2001.     Decided November 21, 2001.

THE STATE OF WASHINGTON, *Respondent,* v. JOHN WILLIAM WHEELER, *Petitioner.*
THE STATE OF WASHINGTON, *Respondent,* v. KINNICK BURNETT SANFORD, *Petitioner.*

MADSEN and SANDERS, JJ., dissent by separate opinions.

*Sarah M. Hrobsky* and *Richard R. Tassano* (of *Washington Appellate Project*) and *Eric Broman* (of *Nielsen, Broman & Associates, P.L.L.C.*), for petitioners.

*Norm Maleng, Prosecuting Attorney*, and *James M. Whisman* and *Deborah A. Dwyer, Deputies*, for respondent.

CHAMBERS, J. — We must decide whether, in light of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), prior convictions used to prove a defendant is a persistent offender must be charged in the information, submitted to a jury, and proved beyond a reasonable doubt. Unless and until the federal courts extend *Apprendi* to require such a result, we hold these additional protections are not required under the United States Constitution or by the Persistent Offender Accountability Act (POAA) of the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW.

## FACTS

Petitioners John Wheeler and Kinnick Sanford were separately convicted of second degree robbery and sentenced to life imprisonment without the possibility of parole under the POAA.

*State v. Wheeler*

John Wheeler was charged with two counts of robbery in the second degree, a class B felony. Wheeler faced a maximum sentence of 10 years for each count. RCW 9A.20.021.[1] On April 7, 1999, Wheeler filed a motion requesting formal notice, a jury trial, and proof beyond a reasonable doubt in the event he was convicted and faced sentencing pursuant to the POAA. This motion was denied. The jury found Wheeler guilty as charged.

Subsequently, the State filed a persistent offender memorandum and presentence statement outlining Wheeler's current and prior offenses. At a separate sentencing hearing, the trial court determined the State had proved by preponderance of the evidence that Wheeler had two prior "most serious offenses," under former RCW 9.94A.030(25) (1999)[2] and therefore was a persistent offender. Wheeler was sentenced to life imprisonment without possibility of parole under former RCW 9.94A.030(29) (1999)[3] and former RCW 9.94A.120(4) (1997).[4] Wheeler's motion for an order

---

[1] A class B felony is punishable "by confinement in a state correctional institution for a term of ten years, or by a fine in an amount fixed by the court of twenty thousand dollars, or by both such confinement and fine." RCW 9A.20.021(1)(b).

[2] Robbery in the second degree is a most serious offense. Former RCW 9.94A.030(25) (1999). Former RCW 9.94A.030(25) (1999) was formerly RCW 9.94A.030(23) (1997). The amendments are not relevant to our purposes, and for the sake of brevity we will refer to RCW 9.94A.030(25).

[3] Under former RCW 9.94A.030(29) (1999), a "[p]ersistent offender" is an offender who:

(a)(i) Has been convicted in this state of any felony considered a most serious offense; and

(ii) Has, before the commission of the offense under (a) of this subsection, been convicted as an offender on at least two separate occasions, whether in this state or elsewhere, of felonies that under the laws of this state would be considered most serious offenses and would be included in the offender score under RCW 9.94A.360; provided that of the two or more previous convictions, at least one conviction must have occurred before the commission of any of the other most serious offenses for which the offender was previously convicted[.]

Former RCW 9.94A.030(29) (1999) was formerly RCW 9.94A.030(27) (1997). The amendments are not relevant to our purposes.

[4] Former RCW 9.94A.120(4) (1997) provides in relevant part, "[a] persistent

declaring that the sentencing constituted cruel and unusual punishment was denied. The Court of Appeals affirmed, finding we had previously rejected the constitutional arguments raised by Wheeler. *State v. Wheeler*, 101 Wn. App. 1022 (2000).

Wheeler argues under *Apprendi* he is entitled to formal notice, a jury trial, and a determination beyond a reasonable doubt that he is a persistent offender.

## State v. Sanford

Kinnick Sanford was found guilty of second degree robbery, a class B felony, and of first degree escape. The statutory maximum sentence for class B felonies is 10 years' imprisonment. RCW 9A.20.021(1)(b). Sanford had previously been convicted of assault with a firearm in California, equivalent to a charge of assault with a deadly weapon in the state of Washington, and of attempted first degree murder and first degree robbery. However, the information did not allege that Sanford had been previously found guilty of "most serious offenses."

Following trial, the State alleged Sanford had prior convictions for "most serious offenses" under the POAA. The State filed a persistent offender memorandum describing current and prior convictions. The sentencing court found the State had proved, by a preponderance of the evidence, the existence of two prior convictions and imposed a sentence of life without possibility of parole. This was affirmed by the Court of Appeals. *State v. Sanford*, 101 Wn. App. 1044 (2000).

Sanford challenges his sentence on the grounds it exceeds the statutory maximum and the State failed to plead and prove the prior convictions to a jury beyond a reasonable doubt.

offender shall be sentenced to a term of total confinement for life without the possibility of parole . . . notwithstanding the maximum sentence under any other law."

ANALYSIS

The POAA requires trial courts to sentence "persistent offenders" to life imprisonment without the possibility of parole. RCW 9.94A.120. A "persistent offender" is one who has two previous convictions for a "most serious offense" as defined by former RCW 9.94A.030(25) (1999).[5] Any persistent offender will be sentenced to life without parole, "notwithstanding the maximum sentence under any other law." Former RCW 9.94A.120(4) (1997).

■ We have previously upheld the POAA as constitutional. *See State v. Manussier*, 129 Wn.2d 652, 921 P.2d 473 (1996) (rejecting challenges based on substantive and procedural due process), *cert. denied*, 520 U.S. 1201 (1997); *State v. Rivers*, 129 Wn.2d 697, 921 P.2d 495 (1996) (rejecting challenges based on the prohibition of cruel and unusual punishment found in the state and federal constitutions); *State v. Thorne*, 129 Wn.2d 736, 921 P.2d 514 (1996) (rejecting challenges based on bill of attainder, cruel and unusual punishment, separation of powers, and equal protection). These companion cases hold that the prior convictions used to prove that a defendant is a persistent offender need not be charged in the information, submitted to the jury, or proved beyond a reasonable doubt. *Manussier*, 129 Wn.2d at 682; *Rivers*, 129 Wn.2d at 712; *Thorne*, 129 Wn.2d at 779-84.

Generally, the State must prove every element of an offense charged beyond a reasonable doubt. *Thorne*, 129 Wn.2d at 783 (citing *State v. Alvarez*, 128 Wn.2d 1, 13, 904 P.2d 754 (1995)). However, traditional factors considered by a judge in determining the appropriate sentence, such as prior criminal history, are not elements of the crime. In *Thorne*, this court concluded that the POAA is a sentencing statute codified as part of the SRA and does not define the "elements" of the status of being a habitual criminal. *Id.* at

---

[5] A "most serious offense" consists of any of the following: (a) a class A felony; (b) a class B felony with a finding of sexual motivation as defined by statute; (c) any felony with a deadly weapon finding; and (d) 19 other named offenses, including second degree robbery. Former RCW 9.94A.030(25)(a)-(v)(ii) (1999).

779. Therefore, the prior convictions that result in a sentence of life imprisonment without the possibility of parole need not be pleaded in the information. All that is required by the constitution and the statute is a sentencing hearing where the trial judge decides by a preponderance of the evidence whether the prior convictions exist. RCW 9.94A.110; *Thorne*, 129 Wn.2d at 782.

### Federal Cases

In *Thorne, Manussier*, and *Rivers*, this Court based its state procedural due process analysis in part on the similarity of state and federal standards, a similarity unsettled by *Apprendi* and its progeny. This change in federal case law requires us to revisit the issue of procedural due process raised by the POAA. When this Court originally upheld enhanced statutory sentences under the POAA, our holdings were consistent with federal due process jurisprudence. *Manussier*, 129 Wn.2d at 681-83. However, federal jurisprudence may be developing in the direction of finding a due process violation where the facts underlying a sentence enhancement are not proved beyond a reasonable doubt to a jury. Three cases demonstrate this development.

First, the United States Supreme Court explicitly held that prior criminal history need not be proved beyond a reasonable doubt to a jury. Recently, that Court analyzed a federal statute punishing illegal reentry after deportation following an aggravated felony conviction. *Almendarez-Torres v. United States*, 523 U.S. 224, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (1998). In a 5-4 decision, the Court held that the fact of the prior conviction constituted a sentence enhancement rather than an element of the crime of being a persistent offender.

Subsequently, the Court redefined certain sentence enhancements as elements of a crime to be proved beyond a reasonable doubt to a jury. *Jones v. United States*, 526 U.S. 227, 119 S. Ct. 1215, 143 L. Ed. 2d 311 (1999). The Court determined that such factors as "serious bodily injury" and

"death resulting," which increase punishment under the car-jacking statute, were elements to be proved rather than sentencing enhancements. The Court based its conclusion on: (1) the amount of the penalty increase caused by the disputed factor; (2) the interdependence of the principal paragraph and the penalty subparagraphs; and (3) the fact that serious bodily injury has traditionally been treated by both Congress and state legislatures as a defining element of aggravated robbery. The question of whether recidivism might be defined as an element of a persistent offender determination under the three-part test was not before the Court.

Finally, the Court found that New Jersey's "hate crime" law was unconstitutional because it provided for a mandatory increase in the sentence beyond the statutory maximum if the trial judge determined, by a preponderance of the evidence, that the defendant acted with certain prohibited motivations. *Apprendi*, 530 U.S. 466. The Court held:

> *Other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. With that exception, we endorse the statement of the rule set forth in the concurring opinions in [*Jones v. United States*]: "[I]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt."

*Apprendi*, 530 U.S. at 490 (emphasis added) (quoting *Jones*, 526 U.S. at 252-53).

The Court did not overturn *Almendarez-Torres*, though it arguably left the question open:

> Even though it is arguable that *Almendarez-Torres* was incorrectly decided, and that a logical application of our reasoning today should apply if the recidivist issue were contested, [Petitioner] does not contest the decision's validity and we need not revisit it for purposes of our decision today to treat the case as a narrow exception to the general rule we recalled at the outset.

*Apprendi*, 530 U.S. at 489-90 (footnote omitted). Thus, the Court suggested that *Almendarez-Torres* might have been incorrectly decided, but explicitly declined to reach the issue. Instead, it confined its decision to factors other than recidivism.

The phrase "[o]ther than the fact of a prior conviction" may, in isolation, be read to establish as a matter of law that prior convictions need not be charged and proved to the jury. However, given the Court's explicit determination that it did not reach the issue of recidivism, the issue is undecided. When and if *Almendarez-Torres* is revisited, the Court may decide the fact of prior convictions, like the fact a death resulted, must be charged and proved like an element of the crime. Justice Thomas clearly signaled he was rethinking his vote in *Almendarez-Torres*. In his *Apprendi* concurrence, Justice Thomas (who provided the fifth vote in *Apprendi*) wrote he now believes that the fact of a prior conviction is an element under a recidivism statute, and not merely a sentence enhancement. He concluded *Almendarez-Torres* treated recidivism differently because of concern that juries would be prejudiced if informed of prior convictions. But this concern "does not make the traditional understanding of what an element is any less applicable to the fact of a prior conviction." *Apprendi*, 530 U.S. at 521 (Thomas, J., concurring). Therefore, Justice Thomas seems to be in agreement with Justice Scalia (who dissented in *Almendarez-Torres* but was part of the majority in *Apprendi*) that prior convictions are an element that must be proved beyond a reasonable doubt to a jury. Without Justice Thomas's vote, the holding in *Almendarez-Torres* would have been different.

No court has yet extended *Apprendi* to hold that sentence enhancements based on the fact of a prior conviction are unconstitutional. *See, e.g., United States v. Mack*, 229 F.3d 226 (3d Cir. 2000) (upholding enhanced sentence for recidivism). We therefore adhere to our previous holding that

such enhancements do not pose a due process problem under the United States Constitution.

## Washington State Constitution

*Rivers, Thorne* and *Manussier* rejected a challenge to the POAA based on analysis of the Washington State Constitution. Should this Court revisit the issue, the state constitution provides the most fruitful approach. Petitioners Wheeler and Sanford have failed to provide a state constitutional analysis. Sanford only briefly mentions the "fundamental principles" provision of the Washington State Constitution. Therefore, even if this Court were inclined to revisit its earlier decisions, these Petitioners do not argue or brief the issues critical to the task.

## CONCLUSION

*Apprendi* did not overrule *Almendarez-Torres*, and no other case has extended *Apprendi* to hold that the federal constitution requires recidivism be pleaded and proved to a jury beyond a reasonable doubt. This Court has already addressed these specific issues in *Thorne, Manussier*, and *Rivers* and we decline to overrule these cases. We therefore hold that Washington State's POAA is not procedurally defective for the reasons claimed by Petitioners Wheeler and Sanford, and we affirm the Court of Appeals in both cases.

ALEXANDER, C.J., and SMITH, JOHNSON, IRELAND, BRIDGE, and OWENS, JJ., concur.

MADSEN, J. (concurring in dissent) — I concur in the result reached by the dissent for the reasons stated in my dissent in *State v. Rivers*, 129 Wn.2d 697, 921 P.2d 495 (1996).

SANDERS, J. (dissenting) — Defendants John Wheeler and Kinnick Sanford claim they were deprived of the legal process to which they were constitutionally due because the

State was relieved of its burden to submit every element of the crime to the jury for its determination. Specifically, they claim that since the Persistent Offender Accountability Act (POAA) increases a determinant sentence of years to life without possibility of parole based solely upon the fact of one's criminal history, that fact, like any other, must be presented to the jury for determination. But here it was admittedly not. Their claim arises under the Fourteenth Amendment to the United States Constitution.

## I

As recognized by the majority, this federal claim is enlightened by the United States Supreme Court's recent decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). Our majority, however, refuses to apply the *Apprendi principle* to the case at bar, opining: "No court has yet extended *Apprendi* to hold that sentence enhancements based on the fact of a prior conviction are unconstitutional." Majority at 123. I posit the question is whether the principle articulated by *Apprendi* already embraces our facts, not whether the Supreme Court has specifically ruled on those facts post-*Apprendi*. That is our job.

It may be fairly said that although it is our obligation not to construe the United States Constitution in a manner inconsistent with the United States Supreme Court, it is equally our responsibility, and solemn duty, to ensure federal constitutional rights of litigants who appear before us are respected and vindicated without exception. I urge it is simply no reason to deny an individual what is constitutionally due because the United States Supreme Court has not yet decided his or her case or one that is factually identical. Rather it is this court's responsibility to apply constitutional principles in a manner consistent with the most recent articulation by the United States Supreme Court.

I can find little discussion, however, by my colleagues of

the *principle* articulated by the Court in *Apprendi*. In *Apprendi* the trial court, from the bench, doubled the sentence of the perpetrator based upon his alleged racial bias without submitting that factual inquiry to the jury as an element to be proved. *Apprendi*, 530 U.S. at 470-71. The Supreme Court reversed, holding that Apprendi's right to that process constitutionally due had been abridged when the trial court sentenced the defendant to more than the statutory maximum based on a fact neither presented to nor found by the jury. *Id.* at 492, 495.

That, I believe, is the constitutional principle at the heart of *Apprendi*. The question here is whether proof of criminal history when used to exceed the statutory maximum sentence must also be submitted to the jury. The majority does not explain why the *Apprendi* principle does not also embrace the facts before us other than simply restating the obvious, i.e., the fact used to enhance Apprendi's sentence above the statutory maximum was different from the fact used to enhance the sentences of Wheeler and Sanford above our maximum. Although *Apprendi* had five votes for the result, the lead opinion contained but three unqualified signatures, Justices Thomas and Scalia writing separately. The dicta which our majority seems to find so attractive appears in part four of the lead opinion:

> In sum, our reexamination of our cases in this area, and of the history upon which they rely, confirms the opinion that we expressed in *Jones* [*v. United States*, 526 U.S. 227, 119 S. Ct. 1215, 143 L. Ed. 2d 311 (1999)]. Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. With that exception, we endorse the statement of the rule set forth in the concurring opinions in that case: "[I]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt."

*Apprendi*, 530 U.S. at 490 (quoting *Jones v. United States,*

526 U.S. 227, 252-53, 119 S. Ct. 1215, 143 L. Ed. 2d 311 (1999) (Stevens, J., concurring)). As the aforementioned quotation demonstrates, the phrase "[o]ther than the fact of a prior conviction" is set forth in the form of a recitation identifying the nature of prior cases considered; however, it is emphatically *not* a statement that the fact of a prior conviction is somehow an exception to the more general rule that all elements must be submitted to the jury. What is implicit in the lead opinion is express in Justice Thomas's concurring opinion (joined by Justice Scalia):

> Thus, if the legislature defines some core crime and then provides for increasing the punishment of that crime upon a finding of some aggravating fact—of whatever sort, *including the fact of a prior conviction*—the core crime and the aggravating fact together constitute an aggravated crime, just as much as grand larceny is an aggravated form of petit larceny. The aggravating fact is an element of the aggravated crime. . . . Each fact necessary for that entitlement is an element.
>
> . . . .
>
> Cases from the founding to roughly the end of the Civil War establish the rule that I have described, applying it to all sorts of facts, including recidivism.

*Apprendi*, 530 U.S. at 501-02 (Thomas, J., concurring) (emphasis added).

What the *Apprendi* lead opinion did say is when the recidivism issue is contested, as it is in the case at bar, the "logical application" of its reasoning applies. *Id.* at 489-90. Analysis of this reasoning shows it is based on a line of precedent dating back at least 30 years to *In re Winship*, 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). *See Apprendi*, 530 U.S. at 490.

In *Winship* the Court held "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." 397 U.S. at 364. This holding was extended in *Mullaney v. Wilbur* to encompass determinations of sentencing as well as determinations of guilt. 421 U.S. 684, 698, 95 S. Ct. 1881, 44 L. Ed. 2d

508 (1975). *Mullaney* explains *Winship* is concerned as much "with the degree of criminal culpability" as with the finding of guilt. *Id.* at 697-98. The Court therefore expressed concern with allowing states limitless ability to define the elements of a crime. If a State is free to define the elements of a crime without due process constraints, it could avoid those very constraints simply by defining facts to be mere factors that "bear solely on the extent of punishment." *Id.* at 698.

*Mullaney*'s extension of *Winship* was refined in *Patterson v. New York*, 432 U.S. 197, 97 S. Ct. 2319, 53 L. Ed. 2d 281 (1977). *Patterson* picked up on *Mullaney*'s discussion of a legislature's ability to define the elements of a crime. Since these limits are of crucial importance to whether prior convictions are elements, or sentencing factors, under the POAA, this portion of *Patterson* is relevant here. According to *Patterson*, the reasonable-doubt standard is dependent on how the State defines the offense in question, and the legislature's definition of the elements of an offense is usually dispositive. *Patterson*, 432 U.S. at 210, 211 n.12 (discussed with approval in *McMillan v. Pennsylvania*, 477 U.S. 79, 106 S. Ct. 2411, 91 L. Ed. 2d 67 (1986)). Nevertheless, there are constitutional limits beyond which legislators may not go in determining what should be an element subject to proof beyond a reasonable doubt and what should be a mere sentencing factor. *Patterson*, 432 U.S. at 210. That is where *Patterson* left off, apparently leaving it to later opinions to iron out where these limits should be drawn.

A decade later, the Court returned to address those limits in *McMillan*, 477 U.S. 79. The sentence enhancement issue in *McMillan* centered on a mandatory minimum sentence based on a finding of visible possession of a firearm. *Id.* at 81. The petitioners argued possession of a firearm was an element of the substantive crime for which they were being sentenced, wherefore due process required this fact be proved to a jury beyond a reasonable doubt. *Id.* at 83, 84. It is important to note, however, the enhanced sentence was

very different from that which we address here. In *McMillan* the enhanced sentence was a mandatory minimum *within* the maximum sentence for the substantive crime. *Id.* at 83. This proved key to the Court's eventual decision to uphold the Pennsylvania statute. The statute operated "to limit the sentencing court's discretion in selecting a penalty *within the range already available to it* without the special finding" of the enhancing factor. *Id.* at 87-88 (emphasis added). Because the enhanced sentence was within the statutory maximum for the substantive offense, the factual determination forming the basis for the enhancement did not act as "a tail which wags the dog of the substantive offense." *Id.* at 88.

But the issue before us here is precisely the opposite of that in *McMillan*. Instead of an enhanced sentence within the statutory maximum for the substantive offense, the POAA mandates an enhanced sentence in excess of that provided for the substantive offense. On such a scenario the *McMillan* Court also spoke:

> Petitioners' claim that visible possession [of a firearm] under the Pennsylvania statute is "really" an element of the offenses for which they are being punished . . . would have at least more superficial appeal if a finding of visible possession *exposed them to greater or additional punishment* . . . .

*Id.* (emphasis added). The seeds from this consideration—that facts that enhance a sentence beyond that approved by the jury's verdict are elements of an aggravated crime—would bloom in *Apprendi*.

In today's case the enhancing factor of prior convictions *does* expose these defendants to greater or additional punishment. Under both *McMillan* and *Apprendi*, then, ours is very much a situation of the tail wagging the dog.

The Court revisited the distinction between element and sentencing factor in *Almendarez-Torres v. United States*, 523 U.S. 224, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (1998). That case involved a federal criminal statute under which reentry by a deportee was subject to a maximum of 2 years'

imprisonment; however a substantially increased maximum of 20 years would result if deportation were the result of conviction of an aggravated felony. *Id.* at 226. The Court held, five to four, such a prior conviction was a sentence-enhancement provision, not an element of a crime. *Id.*

Although *Almendarez-Torres* did involve recidivism as the enhancement factor, it did so in a manner different from the case before us. *See id.* at 226. In *Almendarez-Torres*, recidivism enhanced the maximum sentence from 2 years to 20. *Id.* at 226. Here, on the other hand, recidivism enhances the *minimum* sentence. As the *Almendarez-Torres* Court recognized, "a statutory minimum binds a sentencing judge; a statutory maximum does not." *Id.* at 244.

Under the POAA once the enhancement finding of two prior convictions for most serious offenses has been made, the court has no option but to impose a sentence of life imprisonment without the possibility of parole. Granting a judge discretion to set a sentence within a wider range, as was the case in *Almendarez-Torres*, is different from stripping a judge of sentencing discretion, which is what the POAA does.

In any event, *Almendarez-Torres* has not fared well. The *Apprendi* Court described *Almendarez-Torres* as "at best an exceptional departure" from the line of precedent beginning with *Winship*. *Apprendi*, 530 U.S. at 487. The lead opinion in *Apprendi* limited *Almendarez-Torres* to cases in which the issue of recidivism is uncontested. *See Apprendi*, 530 U.S. at 488 ("Both the certainty that procedural safeguards attached to any 'fact' of prior conviction, and the reality that Almendarez-Torres did not challenge the accuracy of that 'fact' in his case, mitigated the due process and Sixth Amendment concerns otherwise implicated in allowing a judge to determine a 'fact' increasing punishment beyond the maximum of the statutory range.").

Our situation is therefore different from *Almendarez-Torres*. Whereas recidivism enhanced the maximum sentence in *Almendarez-Torres*, here it enhances the maximum *and* minimum sentence. While the statute at issue in *Almendarez-Torres* allowed judicial discretion to impose a

sentence less than the enhanced maximum, under the POAA the statutory minimum of life without parole is fixed and mandatory. Last, whereas recidivism was uncontested in *Almendarez-Torres*, it is contested here.

Rather than discussing the *Apprendi* principle, the majority wanders into a discussion proposing *Almendarez-Torres*, itself a five-to-four decision, is inconsistent with *Apprendi*, attaching significance to the fact it was not formally overruled in *Apprendi*. However prior opinions are not overruled unless necessary to the holding in the later case. The absence of formal language overruling this prior case does not, however, mean the principle recognized in the later case does not also encompass the facts of the earlier one, thereby effectively undermining its foundation and withering its precedential value.

That such is the case here is facially apparent since Justice Thomas voted with the majority in *Almendarez-Torres* but announced in *Apprendi* that he erred by not voting with the dissent in *Almendarez-Torres* which, with the addition of his vote, would have been the new majority. *Apprendi*, 530 U.S. at 520-21 (Thomas, J., concurring).

Even if the facts of the case at bar cannot be fairly distinguished from those in *Almendarez-Torres*, there is precedent to support the view that where it can be reasonably anticipated that a prior Supreme Court case will be overruled by the Supreme Court in a subsequent proceeding, that prior precedent has a force which does not bind. *Parrish v. W. Coast Hotel Co.*, 185 Wash. 581, 55 P.2d 1083 (1936), *aff'd*, 300 U.S. 379, 57 S. Ct. 578, 81 L. Ed. 703 (1937), is a case in point. There a unanimous Washington Supreme Court upheld a Washington minimum wage statute applicable to women against a determined Fourteenth Amendment due process challenge firmly based upon indistinguishable United States Supreme Court decisions rendered in *Adkins v. Children's Hospital*, 261 U.S. 525, 43 S. Ct. 394, 67 L. Ed. 785 (1923), and *Morehead v. New York ex rel. Tipaldo*, 298 U.S. 587, 56 S. Ct. 918, 80 L. Ed. 1347 (1936). Overruling *Adkins* and its progeny, the United

States Supreme Court ultimately affirmed our decision notwithstanding a powerful dissent by Justice Sutherland joined by Justices Van Devanter, McReynolds, and Butler. Indeed, the *Parrish* decision has been widely regarded as one of the most important of the last century because it was, as Joseph Alsop quipped, "[A] switch in time that saved nine" from Roosevelt's court packing scheme.[6]

In *Parrish*, we evidenced an independent view of constitutional jurisprudence directly contrary to recent Supreme Court precedent, but enlightened by prior dissenting opinions in *Adkins*, to vindicate a view ultimately embraced by the United States Supreme Court.

Here, I posit, the views expressed by the Court's majority in *Apprendi* give much more encouragement to the views expressed in this dissent than any solace a bygone majority may have gleaned from dissenting opinions in *Adkins* or our current majority may find in *Almendarez-Torres*. Indeed, in any case, "we must never forget that it is a *constitution* we are expounding,"[7] and it is the protection of the constitutional rights of the litigants before us which is our ultimate responsibility. The Constitution speaks the language of principle. And so must we.

Accepting *Apprendi*'s invitation to follow the logic of its reason, investigation into the background of *Apprendi* demonstrates due process requires prior convictions be proved to a jury beyond a reasonable doubt when used to enhance a sentence beyond that provided for the offense of which the jury found the defendant guilty. The result of a finding of two prior convictions for most serious offenses under the POAA is an enhanced sentence well beyond that provided for the crimes of which Defendants were found guilty. Thus, the principle of *Apprendi*, if not its holding, must lead us to conclude the POAA was unconstitutionally applied to these prisoners. They rightfully expect this court to protect their legal entitlements, and I would yield to that expectation.

---

[6] ROGER K. NEWMAN, HUGO BLACK: A BIOGRAPHY 213-14 (1994).

[7] *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 407, 4 L. Ed. 579 (1819).

## II

Due process concerns itself " 'not only with guilt or innocence in the abstract, but also with the degree of criminal culpability' assessed." *Apprendi*, 530 U.S. at 485 (quoting *Mullaney*, 421 U.S. at 697-98). In other words, due process concerns itself as much with the consequences of a finding of guilt as with the finding of guilt itself. *Apprendi*, 530 U.S. at 484. This is why we require the State "to prove beyond a reasonable doubt all of the elements included in the definition of the offense." *Patterson*, 432 U.S. at 210. Fairness dictates both sides be given access to all the facts and circumstances surrounding the charged offense. If left to speculate as to the consequences of the charged offense, a defendant's ability to prepare an effective defense is unjustly impeded. *Apprendi*, 530 U.S. at 478. The highest standard of proof beyond a reasonable doubt "is required because of the immense importance of the individual interest in avoiding both the loss of liberty and the stigma that results from a criminal conviction." *McMillan*, 477 U.S. at 103 (Stevens, J., dissenting). Concomitantly, the "duty of the State of establishing every fact of the equation which adds up to a crime, and of establishing it to the satisfaction of a jury beyond a reasonable doubt is the decisive difference between criminal culpability and civil liability." *Leland v. Oregon*, 343 U.S. 790, 805, 72 S. Ct. 1002, 96 L. Ed. 1302 (1952) (Frankfurter, J., dissenting). A legislature (or the people by popular initiative) cannot circumvent these constitutional protections simply by labeling a certain factual determination "element" and another "sentencing factor" as it sees fit. *See Apprendi*, 530 U.S. at 484.

While recidivism does not go to the commission of the offense itself, it certainly goes to the consequences of that commission under this statute. *Cf. id.* A statutory minimum sentence beyond the maximum sentence for the substantive crime reflects a determination that a defendant twice previously convicted of a most serious offense is more blameworthy than a defendant who was not. *Cf. McMillan*,

477 U.S. at 97 (Stevens, J., dissenting). Plainly then, the POAA ups the ante for a defendant.

> If a defendant faces punishment beyond that provided by statute when an offense is committed under certain circumstances but not others, it is obvious that both the loss of liberty and the stigma attaching to the offense are heightened; it necessarily follows that the defendant should not—at the moment the State is put to proof of those circumstances—be deprived of protections that have, until that point, unquestionably attached.

*Apprendi*, 530 U.S. at 484. Thus, from the standpoint of due process, the finding of guilt and the imposition of a sentence are not two distinct and separate considerations: they are two sides of the same coin.

It has been argued recidivism is a traditional factor which courts always have taken into account when determining the appropriate sentence, and, as such, recidivism should not be considered an element of the offense which must be submitted to a jury. As valid as this argument may be taken by itself under some circumstances, it does not support the POAA's mandatory minimum sentence of life without parole. We must recognize a fundamental difference between a *member of the bench* exercising sound *discretion* to consider the impact of prior convictions in an *individual case* and a *statute* which *mandates* the imposition of a sentence upon the finding of certain facts in *every case*. Under the POAA, a sentencing judge has no discretion. The tradition of courts taking recidivism into account to determine the appropriate sentence is nowhere to be found in the rigors of the POAA. The decision to impose a particular sentence has already been made—by members of the electorate, not the court.

Here the jury is removed from "the determination of a fact that, if found, exposes the criminal defendant to a penalty *exceeding* the maximum he would receive if punished according to the facts reflected in the jury verdict alone." *Id.* at 482-83. If a member of the bench can make factual determinations predicate to imposition of a new

sentencing scheme the role of the jury in administering criminal justice is severely undermined. As recognized by the Court:

> If a potential penalty might rise from 15 years to life on a nonjury determination, the jury's role would correspondingly shrink from the significance usually carried by determinations of guilt to the relative importance of low-level gatekeeping: in some cases, a jury finding of fact necessary for a maximum 15-year sentence would merely open the door to a judicial finding sufficient for life imprisonment. It is therefore no trivial question to ask whether recognizing an unlimited legislative power to authorize determinations setting ultimate sentencing limits without a jury would invite erosion of the jury's function to a point against which a line must necessarily be drawn.

*Jones v. United States*, 526 U.S. 227, 243-44, 119 S. Ct. 1215, 143 L. Ed. 2d 311 (1999). Therefore, circumstances that lead to a higher permissible punishment must be specifically charged and proved by the State to the jury. *Apprendi*, 530 U.S. at 480.

This should be kept separate from the authority of a sentencing judge

> to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment *within the range* prescribed by statute. We have often noted that judges in this country have long exercised discretion of this nature in imposing sentence *within statutory limits* in the individual case.

*Id*. at 481. Judges are stripped of their discretionary power when the legislature or people through an initiative mandate the imposition of a particular sentence. But ours is a society in which administration of criminal justice is to be left to the judiciary in the form of judge and jury.

> When a judge's finding based on a mere preponderance of the evidence authorizes an increase in the maximum punishment, it is appropriately characterized as "a tail which wags the dog of the substantive offense."

*Id*. at 495 (quoting *McMillan*, 477 U.S. at 88).

To echo Justice Scalia's concurrence in *Apprendi*, we must sometimes remind ourselves judges are part of, in fact employees of, the State. *Id.* at 498 (Scalia, J., concurring). Jurors are not. Statutes like the POAA therefore undermine a jury's purposeful power to thwart the State when it has overstepped its bounds by prosecuting a political or abusive charge. *Cf. Jones*, 526 U.S. at 245.

> The founders of the American Republic were not prepared to leave [criminal justice] to the State, which is why the jury-trial guarantee was one of the least controversial provisions of the Bill of Rights. It has never been efficient; but it has always been free.

*Apprendi*, 530 U.S. at 498 (Scalia, J., concurring).

### III

Finally, the majority's decision to await decision by the federal courts weakens the position of the several states in the administration of criminal law under the umbrella of federalism. This is a criminal case involving interpretation of a Washington statute. Administration of justice by an individual State is firmly within the purview of that State. *Patterson*, 432 U.S. at 201-02. "It goes without saying that preventing and dealing with crime is much more the business of the States than it is of the Federal Government . . . ." *Id.* at 201. This court should not abdicate its responsibility as the ultimate arbiter of either Washington law or the ultimate state authority to apply federal law.

We are here faced with constitutional protections of utmost significance: the deprivation of liberty without due process of law. *See Apprendi*, 530 U.S. at 476. To, as the majority suggests, sit on our hands on the off chance the Supreme Court someday will return to the very issue defendants ask us to resolve—and I might add, on which we requested the parties to additionally brief—is irresponsible. While our wait here in the Temple of Justice will be a comfortable one, the same cannot be said for those whose imprisonment under the POAA continues without remis-

sion or hope. The defendants' claims must be addressed on the merits. I submit we must hold any fact, including prior convictions, that results in an enhanced sentence beyond the statutory maximum for the substantive crime is simply an element of a new, aggravated crime. And, as such, due process requires the new element be charged in the information, pleaded, and proved to the jury to its satisfaction and beyond a reasonable doubt.

The reed which confines these men for the rest of their lives without possibility of parole is too thin to justify denial of the requested relief. The question is not whether any "court has yet extended *Apprendi* to hold that sentence enhancements based on the fact of a prior conviction are unconstitutional," majority at 123, but rather whether the constitutional principle of due process as articulated in *Apprendi* was violated by the treatment afforded these men. I think it was, and accordingly would reverse.