# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 58297-0-II |
| Respondent, | |
| v. | |
| RYAN MCKENNA HALL, | UNPUBLISHED OPINION |
| Appellant. | |

MAXA, P.J. – Ryan Hall appeals his convictions of felony harassment and misdemeanor harassment and his sentence. After his arrest for an unrelated incident, Hall used threatening language against both his arresting officer and a nurse at the hospital where he received treatment.

The jury was instructed on the definition of "threat" based on existing Washington law that subsequently was rendered erroneous by a United States Supreme Court case, *Counterman v. Colorado*, 600 U.S. 66, 143 S. Ct. 2106, 216 L. Ed. 2d 775 (2023). Hall appeared at pretrial hearings and at sentencing from an in-court holding cell in a jail courtroom. At sentencing, the trial court determined without a jury finding that Hall was on community custody when he committed the offenses, adding one point to his offender score.

We hold that (1) the State provided sufficient evidence to convict Hall for felony harassment and misdemeanor harassment under the trial court's jury instructions; (2) the court's

harassment jury instructions were rendered erroneous by *Counterman*, but the error was harmless beyond a reasonable doubt; (3) we decline to consider for the first time on appeal Hall's argument that the trial court violated his due process rights under *State v. Luthi*, 3 Wn.3d 249, 256, 549 P.3d 712 (2024), when it restrained him in an in-court holding cell during pretrial hearings and sentencing because Hall cannot show manifest error; (4) the trial court's finding at sentencing that Hall was on community custody when he committed his offenses was permissible despite the holding in *Erlinger v. United States*, 602 U.S. 821, 144 S. Ct. 1840, 219 L. Ed. 2d 451 (2024); (5) Hall's statement of additional grounds (SAG) claims are based on evidence outside the record and are unreviewable; and (6) as the State concedes, the crime victim penalty assessment (VPA) and the jury demand fee must be stricken from the judgment and sentence.

Accordingly, we affirm Hall's convictions and sentence, but we remand for the trial court to strike the VPA and the jury demand fee from the judgment and sentence.

FACTS

*Background*

On February 5, 2023, the Kelso Police Department took Ryan Hall into custody on an unrelated charge.[1] While he was being transported to jail, Hall told Officer Ralph Hines he had ingested fentanyl pills. He then was rerouted to a hospital. Hines was assigned to guard Hall as he was checked out medically.

During Hall's examination, nurse Brittany Lealao cut off his shirt to allow the doctor to conduct an ultrasound of his chest. This agitated Hall and he proceeded to repeatedly berate

---

[1] The State initially charged Hall with fourth degree assault – domestic violence. The State eventually decided to not pursue this charge because the victim was uncooperative.

Lealao, insulting her, calling her offensive names, and referring to her using racial slurs. Hall continued to yell at other hospital staff and told another nurse that when he got out the next day he would "see them on the streets." Report of Proceedings (RP) at 188. After Lealao left the room, Hannah Cathcart, an emergency room technician, heard Hall say, "I will slit her throat, the one that cut my shirt off." RP at 160. Nurse Joshua Bockman heard Hall make a similar threat about Lealao: "I'll cut your throat, you n***** bitch." RP at 178. Cathcart later told Lealao about the threat Hall had made. Further, Hall threatened to knock out both Hines and Bockman.

Hines, Cathcart, and Lealao all testified that they did not believe Hall was intoxicated. Hall denied drinking anything. The doctor discharged him and stated in his evaluation that he did not see any mental issues.

Once Hall was released, Hines transported him to the Cowlitz County Jail. According to Hines, Hall guaranteed that Hines would be dead in 14 days. The State played the video from Hines's body camera, but some of the words Hall said were indiscernible. Hines recounted the following in his report:

> [Hall] said, "You will take your last breath within two weeks. In 14 days, you will no longer be on this Earth." When I asked Hall what he meant by that, he said, "You will be deceased in 14 days. Guaranteed."

RP at 144.

After they arrived at the jail, Hall again threatened Hines, stating, "You're going to be dead within two weeks . . . I swear to God." RP at 145. Following this second incident, Hines told Hall that he would charge him for the threats.

The State charged Hall with felony harassment – criminal justice participant for his statements to Hines, felony harassment – threat to kill for his statements toward Lealao, and interference with health care facility.

3

*Pretrial Proceedings*

At Hall's first appearance, he appeared from an in-court holding cell in a jail courtroom inside of the Cowlitz County Jail. The trial court did not undertake an individualized inquiry into the necessity of the holding cell. But Hall did not object to appearing in the holding cell. The prosecutor informed the court of the alleged death threats and the fact that Hall had 18 prior warrants, nine prior felonies, and 17 prior misdemeanors. Hall requested bail be set at $5,000, but the court set bail at $40,000.

Hall appeared from the in-court holding cell again at an arraignment on new information and at a trial readiness hearing. The trial court again did not conduct an individualized inquiry into the necessity of the holding cell on either occasion. Hall did not object to either of these appearances.

*Trial and Sentencing*

At trial in April 2023, Hines, Lealao, Cathcart, and Bockman testified to the facts stated above.

Hines testified that he was placed in reasonable fear that Hall's threats would be carried out because Hall would be getting out of jail. Hines stated that although he had been threatened before, this instance stood out because Hall repeated the threat more than once and swore to God about it.

Lealao testified that Hall's threat that he was going to slit her throat left her "[f]earful, terrified, traumatized." RP at 190. She stated that she was in reasonable fear that Hall would carry out the threat.

The trial court instructed the jury that a person commits the crime of felony harassment when they "threaten[] to cause bodily injury immediately or in the future to another person," the

person is placed "in reasonable fear that the threat will be carried out," and the threat involves a threat to kill the person. Clerk's Papers (CP) at 72. The court gave jury instruction 10 regarding the legal definition of a threat:

> To be a threat, a statement or act must occur in a context or under such circumstances where *a reasonable person*, in the position of the speaker, would foresee that the statement or act would be interpreted as a serious expression of intention to carry out the threat rather than as something said in jest or idle talk.

CP at 75 (emphasis added).

The jury found Hall guilty of felony harassment involving Hines, guilty of the lesser offense of misdemeanor harassment involving Lealao, and guilty of interference with a health care facility.

At his sentencing hearing, Hall again appeared from an in-court holding cell and the trial court did not conduct an individualized inquiry into the necessity of the holding cell. Hall did not object.

Hall's attorney stipulated to an offender score of 9, made up of eight points for prior felony convictions and an additional point for being on community custody when he committed the present offenses. The standard sentencing range for felony harassment given Hall's offender score was 51-60 months, and the State asked the trial court to impose the maximum sentence. Hall requested a 55.5 month prison based drug offender sentencing alternative (DOSA) sentence.

The trial court stated,

> [W]hen watching that video and listening to it at the hospital, and in the police vehicle, that one thing was very clear: that those people were there, especially at the hospital, to help you and to serve you. And instead, they were treated with absolute worst behavior.

> What you called people, what you said to people, and what you threatened to do -- I apologize, I don't recall her name -- the victim, that was nothing -- doing nothing but her job.

> And then Officer Hines, again, doing his job. He's there to protect the community, serve the community, and he has a right to do that, free from having his life threatened.
> . . . .
> But what I listened to and what I heard were clear threats. And it's for that reason that in Count II of the felony harassment I am going to impose the 60 months. I am not giving the prison based DOSA.

RP at 310-11.

The trial court sentenced Hall to 60 months for the felony harassment conviction and 364 days for the other two convictions, all to be served concurrently. The court waived most discretionary legal financial obligations, but imposed the $500 VPA and the $250 jury demand fee.

Hines appeals his felony harassment and misdemeanor harassment convictions and his sentence.

## ANALYSIS

A.     HARASSMENT CONVICTIONS

Hall argues that under *Counterman*, 600 U.S. 66, his harassment convictions must be reversed because (1) the State did not present sufficient evidence that his speech was a "true threat" and (2) the jury instruction defining a "threat" was erroneous. We disagree regarding sufficiency of the evidence. We agree that jury instruction 10 was erroneous, but we conclude that the error was harmless.

1.     Sufficiency of Evidence

Hall argues that the State presented insufficient evidence to convict him of harassment in light of the new "true threat" standard announced in *Counterman*. We disagree.

6

a. Standard of Review

The test for determining sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the fact at issue beyond a reasonable doubt. *State v. Bergstrom*, 199 Wn.2d 23, 40-41, 502 P.3d 837 (2022). In a sufficiency of the evidence claim, the defendant admits the truth of the evidence, and we view the evidence and all reasonable inferences drawn from that evidence in the light most favorable to the State. *State v. Cardenas-Flores*, 189 Wn.2d 243, 265, 401 P.3d 19 (2017). We defer to the trier of fact's resolution of conflicting testimony, witness credibility, and the persuasiveness of the evidence. *Bergstrom*, 199 Wn.2d at 41.

b. Legal Principles

RCW 9A.46.020(1)(a)(i) states that a person is guilty of harassment if they knowingly threaten to cause bodily injury. Because this statute criminalizes pure speech, to avoid violating the First Amendment Washington courts have interpreted RCW 9A.46.020(1)(a)(i) as prohibiting only "true threats." *State v. Allen*, 176 Wn.2d 611, 626, 294 P.3d 679 (2013).

Under Washington law existing at the time of trial, a true threat was a " 'statement made in a context or under such circumstances wherein a *reasonable person* would foresee that the statement would be interpreted . . . as a serious expression of intention to inflict bodily harm upon or to take the life' of another person." *State v. Kilburn,* 151 Wn.2d 36, 43, 84 P.3d 1215 (2004) (emphasis added) (internal quotation marks omitted) (quoting *State v. Williams,* 144 Wn.2d 197, 207-08, 26 P.3d 890 (2001)). A true threat is one that arouses fear in the person threatened, and that fear does not depend on the speaker's intent. *Kilburn,* 151 Wn.2d at 43. Therefore, a statement will be considered a true threat if a "reasonable speaker would foresee

7

that the threat would be considered serious." *State v. Schaler,* 169 Wn.2d 274, 283, 236 P.3d 858 (2010). Under this standard, the mens rea of harassment is simple negligence. *Id.* at 287.

After Hall was convicted but during this appeal, the United States Supreme Court decided *Counterman*, 600 U.S. 66. The Court held that the First Amendment requires that the true threat determination must include a "subjective mental-state requirement." *Id.* at 75. The State must prove the defendant made the threat at least recklessly. *Id.* at 69, 79. Specifically, "[t]he State must show that the defendant consciously disregarded a substantial risk that [their] communications would be viewed as threatening violence." *Id.* at 69. The defendant must be "aware 'that others could regard [their] statements as' threatening violence and 'deliver[ed] them anyway.' " *Id.* at 79 (quoting *Elonis v. United States*, 575 U.S. 723, 746, 135 S. Ct. 2001, 192 L. Ed. 2d 1 (2015) (Alito, J., concurring in part and dissenting in part)).

c. Analysis

Hall argues that the evidence was insufficient to convict him of both counts of harassment because the State did not prove that his speech was a true threat under the recklessness standard imposed in *Counterman*.

Hall is mistaken that *Counterman* applies to his sufficiency challenge. Sufficiency of the evidence regarding a true threat necessarily must be determined based on the trial court's instruction 10, which defined "threat" under existing Washington law: whether "a reasonable person, in the position of the speaker, would foresee that the statement or act would be interpreted as a serious expression of intention to carry out the threat." CP at 75. The trial court did not require the State to prove recklessness, and therefore the State had no reason to present evidence of recklessness.

Under the reasonable person standard in instruction 10, the State clearly presented sufficient evidence of a true threat. Hall conceded as much at oral argument. Hall threatened to slit Lealao's throat. Hines testified that Hall guaranteed that Hines would be dead within 14 days. Hall later swore to God that Hines would be dead in two weeks. No witness testified that Hall used any humorous language or that his threats were in jest.

Viewing the evidence in this case in a light most favorable to the State, we conclude that a reasonable person would foresee that the statement or act would be interpreted as a serious expression of intention to carry out these threats. Therefore, we hold that sufficient evidence supported both of Hall's harassment convictions under the trial court's instructions.

2.  True Threat Jury Instruction

Hall argues that jury instruction 10 – which defined a threat – was erroneous under *Counterman*. The State concedes that the jury instruction was erroneous, but argues that the error was harmless. We agree with the State.

a.  Erroneous Instruction

The trial court instructed the jury that to be a threat,

> [A] statement or act must occur in a context or under such circumstances where *a reasonable person*, in the position of the speaker, would foresee that the statement or act would be interpreted as a serious expression of intention to carry out the threat rather than as something said in jest or idle talk.

CP at 75 (emphasis added).

Although this true threat instruction was correct under the existing law, under *Counterman* the instruction is erroneous. *State v. Calloway*, 31 Wn. App. 2d. 405, 421-22, 550 P.3d 77, *review granted*, 3 Wn.3d 1031 (2024). The instruction omitted the constitutional requirement that *Hall* – not just a reasonable person – " 'consciously disregarded a substantial

9

risk that [their] communications would be viewed as threatening violence.' " *Id.* at 421 (quoting *Counterman*, 600 U.S. at 69).

Accordingly, we agree that jury instruction 10 was erroneous.

b.    Harmless Error

We review an error in the harassment jury instructions relating to the true threat requirement under a constitutional harmless error standard. *Calloway*, 31 Wn. App. 2d. at 423-24. We presume prejudice, and the State must prove beyond a reasonable doubt that the error was harmless. *Id* at 424. An error is harmless if we are convinced beyond a reasonable doubt that the jury would have reached the same verdict without the error. *Id.*

Omitting the required mens rea from the jury instructions " 'may be harmless when it is clear that the omission did not contribute to the verdict,' for example, when 'uncontroverted evidence supports the omitted element.' " *Id.* (quoting *Schaler*, 169 Wn.2d at 288). However, "an 'error is not harmless when the evidence and instructions leave it ambiguous as to whether the jury could have convicted on improper grounds.' " *Id.* (quoting *Schaler*, 169 Wn.2d at 288).

Here, Hall made unambiguous threats to both Hines and Lealao. Hines testified that Hall told him he would be dead within 14 days, guaranteed. Hall then said that Hines would be dead in two weeks, "I swear to God." RP at 145. Hall said that he would slit Lealao's throat after telling a nurse that he would see them on the streets when he got out the next day.

In concluding that harmless error applied in that case, the court in *Calloway* noted that no witnesses testified that "[the defendant's] statements were hyperbolic, that [the defendant] had a longstanding pattern of saying similar things without meaning them, or that intoxication or symptoms of a mental illness affected [the defendant's] state of mind on the day of the incident." 31 Wn. App. 2d at 425. The same is true here. Multiple witnesses testified that they did not

10

believe Hall was intoxicated, and Hall himself denied drinking. The doctor found no signs of mental illness during Hall's examination.

Given the repeated and adamant threats to kill Hines and the very specific threat to slit Lealao's throat, no reasonable jury would find that Hall did not consciously disregard a substantial risk that his statements would be viewed as threatening violence. Therefore, we hold that the jury instruction error was harmless beyond a reasonable doubt.

B.      COURT APPEARANCE IN AN IN-COURT HOLDING CELL

Hall argues that the trial court forcing him to appear at multiple pretrial hearings and at sentencing in an in-court holding cell violated his due process rights under the Fourteenth Amendment of the United States Constitution and article I, section 22 of the Washington Constitution. The State does not dispute Hall's claim on the merits, but argues that Hall's claim cannot be raised for the first time on appeal because the claim does not constitute a manifest error affecting a constitutional right under RAP 2.5(a)(3). We agree with the State.

1.      Applicable Law

After Hall was convicted but during this appeal, our Supreme Court decided *Luthi*, 3 Wn.3d 249. In *Luthi*, the court addressed whether a criminal defendant can be required to appear at court proceedings from the same Cowlitz County in-court holding cell used in this case. *Id.* at 251.

In a matter of first impression, the court concluded that the in-court holding cell was a "restraint" on defendants that implicated due process protections. *Id.* at 260-61. The court emphasized that the in-court holding cell was a restraint on defendants because it "undermines the presumption of innocence, the ability to consult with counsel, and the dignity of the proceedings." *Id.* at 261. Therefore, the court held that the routine practice of requiring

defendants to appear from an in-court holding cell violates due process unless the trial court makes an "individualized finding that such a restraint is necessary for courtroom security reasons." *Id.* at 263.

The State does not argue that Hall's appearances from the in-court holding cell were lawful under *Luthi*.

2. Manifest Error

RAP 2.5(a) states that the "appellate court may refuse to review any claim of error which was not raised in the trial court." Here, Hall did not object to appearing from the in-court holding cell. Therefore, he did not preserve the error. However, a party may raise a manifest error affecting a constitutional right for the first time on appeal. RAP 2.5(a)(3).

There is no question that Hall's claimed error under *Luthi* is constitutional in nature. The question is whether the claimed error is manifest.

An error is manifest if the appellant shows actual prejudice. *State v. J.W.M.*, 1 Wn.3d 58, 91, 524 P.3d 596 (2023). The appellant must make a plausible showing that the claimed error had practical and identifiable consequences. *Id.*

Here, Hall argues manifest error regarding only his appearances when the trial court set bail and when the trial court sentenced him. Regarding bail, Hall notes that he requested bail of $5,000 but the court imposed a $40,000 bail. But Hall has not shown how appearing in an in-court holding cell made any difference. The court knew that Hall had been detained in jail on as-yet unproven charges, and the prosecutor informed the court of the alleged death threats and the fact that Hall had 18 prior warrants, nine prior felonies, and 17 prior misdemeanors. So it is hard to see how appearing in an in-court holding cell could have affected the court. And there is no indication that Hall needed to talk to his attorney during the bail hearing.

Regarding sentencing, Hall notes that he requested a court-based DOSA but the trial court imposed the maximum 60 month sentence. But at that point, Hall had been convicted, so there was no concern about presumption of innocence. And there is no indication that Hall needed to talk to his attorney during sentencing. Finally, the court explained in detail why it imposed the 60 month sentence rather than a DOSA.

Hall argues that under *State v. O'Hara*, actual prejudice refers to "whether the error is so obvious on the record that the error warrants appellate review." 167 Wn.2d 91, 99-100, 217 P.3d 756 (2009). And "to determine whether an error is practical and identifiable, the appellate court must place itself in the shoes of the trial court to ascertain whether, given what the trial court knew at that time, the court could have corrected the error." *Id.* at 100.

But the error was not manifest under this standard as well. At the time of Hall's pretrial hearings, trial and sentencing, *Luthi* had not yet been decided. No Washington court had held that a defendant's appearance at nonjury proceedings in an in-court holding cell constituted a restraint subject to due process protections. *See Luthi*, 3 Wn.2d at 258-61. Therefore, the trial court's error was not obvious on the record. In addition, the trial court could not have corrected the error given what the court knew pre-*Luthi*.

Hall also argues that this court should consider this issue under the rule set forth in *State v. Robinson*, 171 Wn.2d 292, 253 P.3d 84 (2011). In that case, the Supreme Court stated,

> [P]rinciples of issue preservation do not apply where the following four conditions are met: (1) a court issues a new controlling constitutional interpretation material to the defendant's case, (2) that interpretation overrules an existing controlling interpretation, (3) the new interpretation applies retroactively to the defendant, and (4) the defendant's trial was completed prior to the new interpretation. A contrary rule would reward the criminal defendant bringing a meritless motion to suppress evidence that is clearly barred by binding precedent while punishing the criminal defendant who, in reliance on that binding precedent, declined to bring the meritless motion.

*Id.* at 305.

However, the second requirement is not satisfied here. There was no binding precedent holding that having a defendant appear in an in-court holding cell did not violate due process. Hall was free to object – as the defendant did in *Luthi* – without being "clearly barred by binding precedent." *Id.* Therefore, the rule in *Robinson* does not apply.

We conclude that Hall cannot show manifest error. Therefore, we decline to consider Hall's argument regarding the in-court holding cell.

C.    TRIAL COURT FINDING ON COMMUNITY CUSTODY

Hall argues that the trial court impermissibly found that he was on community custody at the time of his offenses, which added a point to his offender score. Hall claims that under *Erlinger*, 602 U.S. 821, the fact that he was on community custody was required to be found by a jury, not by the court. The State argues that the trial court properly considered Hall's placement on community custody and that *Erlinger* is not applicable to this case. We agree with the State.

The Fifth Amendment of the United States Constitution guarantees that no person should "be deprived of life, liberty, or property, without due process of law." The Sixth Amendment guarantees criminal defendants the right to a speedy trial by an impartial jury of their peers. The United States Supreme Court has interpreted these Amendments to generally require "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct 2348, 147 L. Ed. 2d, 435. There is a narrow exception to this rule: the trial court may "undertake the job of finding the fact of a prior conviction – and that job alone." *Erlinger*, 602 U.S. at 837.

Our Supreme Court has long adopted the prior conviction exception and held that sentence enhancements based on judicial findings of prior convictions are constitutional. *State v. Wheeler*, 145 Wn.2d 116, 123-24, 34 P.3d 799 (2001). Specific to this case, the Supreme Court in *State v. Jones* held that "[t]o give effect to the prior conviction exception, Washington's sentencing courts must be allowed as a matter of law to determine not only the fact of a prior conviction but also those facts 'intimately related to [the] prior conviction' *such as the defendant's community custody status*." 159 Wn.2d 231, 241, 149 P.3d 636 (2006) (emphasis added) (quoting *United States v. Moore*, 401 F.3d 1220, 1225 (10th Cir. 2005)). "[B]ecause community custody is directly related to and follows from the fact of a prior conviction and because the attendant factual determinations involve nothing more than a review of the nature of the defendant's criminal history and the defendant's offender characteristics, such a determination is properly made by the sentencing judge." *Id.* at 234.

Hall argues that we should disregard *Jones* in light of *Erlinger*. In *Erlinger*, the Court held that the fact determination of whether qualifying convictions were part of different occasions under the Armed Career Criminal Act (ACCA), 18 U.S.C. §924(e)(1), was a question that must be sent to the jury. 602 U.S. at. 821. But the Court expressly limited its ruling to the ACCA. *Id.* at 835. The Court noted that there had been criticism of the prior conviction exception, but it did not revisit that rule. *Id.* at 837-38.

Both this court and Division One of this court have decided that the holding in *Erlinger* is limited to the "different occasions" inquiry under the ACCA and does not overrule existing Washington precedent. *State v. Frieday*, ___ Wn. App. 2d ___, 565 P.3d 139, 155 (2025); *State v. Anderson*, 31 Wn. App. 2d 668, 681, 552 P.3d 803, *review denied*, 3 Wn.3d 1034 (2024). We agree with these cases, and we conclude that *Erlinger* does not overrule *Jones*. Therefore, we

hold that the trial court did not err in finding that Hall was on community custody when he committed his offenses.[2]

D.        SAG CLAIMS

In his SAG, Hall argues that the State's witnesses lied during trial and that the State's use of false testimony was unfair. But these assertions rely entirely on matters outside the record. As a result, we cannot consider them on direct appeal. *State v. Alvarado*, 164 Wn.2d 556, 569, 192 P.3d 345 (2008). These assertions are more properly raised in a personal restraint petition. *Id.*

E.        LEGAL FINANCIAL OBLIGATIONS

Hall argues, and the State concedes, the VPA and jury demand fee should be stricken. We agree.

Effective July 1, 2023, RCW 7.68.035(4) prohibits courts from imposing the VPA on indigent defendants as defined in RCW 10.01.160(3). *See State v. Ellis*, 27 Wn. App. 2d 1, 16, 530 P.3d 1048 (2023), *review granted*, 4 Wn.2d 1009 (2025). For purposes of RCW 10.01.160(3), a defendant is indigent if they meet the criteria in RCW 10.101.010(3)(a)-(c). Although this amendment took effect after Hall's sentencing, it applies to cases pending on appeal. *Ellis*, 27 Wn. App. 2d at 16. The trial court found Hall was indigent under RCW 10.101.010(3)(a)-(c), and therefore the VPA must be stricken.

---

[2] Hall also argues that the State was required to allege in the information that he was on community custody when he committed his offenses for the court to add a point to his offender score based on that fact. However, he cites no specific authority for this proposition. In light of our holding above, we reject this argument.

The trial court imposed the jury demand fee on Hall after finding him indigent. The jury demand fee may not be imposed on indigent defendants. RCW 10.46.190. Therefore, the jury demand fee must be stricken.

## CONCLUSION

We affirm Hall's convictions and sentence, but we remand for the trial court to strike the VPA and the jury demand fee from the judgment and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, P.J.

We concur:

_____
PRICE, J.

_____
CHE, J.