**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>     Respondent,<br><br>  v.<br><br>HOWARD LEE ROSS,<br><br>     Appellant. | No. 84490-3-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION |

MANN, J. — RCW 9.41.040(1) makes it a class B felony for a person previously convicted of a serious offense to possess a firearm. Howard Ross was convicted of first degree unlawful firearm possession under RCW 9.41.040(1) based on a prior conviction for second degree burglary—a defined serious offense. Ross appeals and argues that under the Second Amendment to the U.S. Constitution and New York State Rifle & Pistol Ass'n v. Bruen, 597 U.S. ___, 142 S. Ct. 2111, 213 L. Ed. 2d 387 (2022), RCW 9.41.040 is unconstitutional as applied. We disagree and affirm.

I

Ross was convicted by a jury of unlawful possession of a firearm in the first degree. A person "is guilty of the crime of unlawful possession of a firearm in the first

No. 84490-3-I/2

degree, if the person owns, accesses, has in the person's custody, control or possession, or receives any firearm after having previously been convicted or found not guilty by reason of insanity in this state or elsewhere of any serious offense." RCW 9.41.040(1)(a). Ross's conviction was based on his previous 2010 conviction for burglary in the second degree.

Ross appeals.

II

Ross argues that, as applied to him, RCW 9.41.040(1) is unconstitutional because the government cannot justify restricting the possession of firearms for those with nonviolent felony convictions. We disagree.

We review constitutional challenges de novo. City of Seattle v. Evans, 184 Wn.2d 856, 861-62, 366 P.3d 906 (2015). "We presume that statutes are constitutional and place 'the burden to show unconstitutionality . . . on the challenger.'" Evans, 184 Wn.2d at 861-62 (quoting In re Estate of Hambleton, 181 Wn.2d 802, 817, 335 P.3d 398 (2014)). An as-applied challenge to a statute's constitutionality requires examination of the statute in the specific circumstances of the case. See Fields v. Dep't of Early Learning, 193 Wn.2d 36, 46, 434 P.3d 999 (2019); see also City of Redmond v. Moore, 151 Wn.2d 664, 668-69, 91 P.3d 875 (2004) (as-applied challenges are "characterized by a party's allegation that application of the statute in the specific context of the party's actions or intended actions is unconstitutional"). Holding a statute unconstitutional as-applied does not invalidate the statute, but prohibits its application in that specific context and future similar contexts. Moore, 151 Wn.2d at 669.

No. 84490-3-I/3

A

The Second Amendment to the U.S. Constitution provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II.[1]

In District of Columbia v. Heller, 554 U.S. 570, 573, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008), the Supreme Court considered whether the District of Columbia's ban on an individual's right to possess handguns, and requirement that firearms in the home be kept nonfunctional, violated the Second Amendment. After analyzing the language and history of the Second Amendment, the Court held "that the Second Amendment conferred an individual right to keep and bear arms." Heller, 554 U.S. at 595. Accordingly, the District's "ban on handgun possession in the home violates the Second Amendment, as does its prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self-defense." 554 U.S. at 635.

The Court recognized, however, that "the right secured by the Second Amendment is not unlimited." Heller, 554 U.S. at 626. The Court identified several longstanding prohibitions, including possession by felons:

> Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

---

[1] While Ross does not cite the Washington constitution, we note that it provides independent individual protection of the right to bear arms, "the right of the individual citizen to bear arms in defense of himself, or the state, shall not be impaired." WASH. CONST. art. I, § 24.

No. 84490-3-I/4

<u>Heller</u>, 554 U.S. at 626-27.

Consistent with its holding and recognition of longstanding limitations, the Court required the District to permit Heller to register his handgun and issue him a license to carry it in the home, assuming that he was "not disqualified from the exercise of Second Amendment rights." <u>Heller</u>, 554 U.S. at 635.

Two years later in <u>McDonald v. City of Chicago, Ill.</u>, 561 U.S. 741, 130 S. Ct. 3030, 177 L. Ed. 2d 894 (2010), the Supreme Court addressed Chicago's similar ban on handguns under the Second and Fourteenth Amendments. The Court concluded "that the Due Process Clause of the Fourteenth Amendment incorporates the Second Amendment right recognized in <u>Heller</u>." <u>McDonald</u>, 561 U.S. at 791. In doing so, the Supreme Court again emphasized that the Second Amendment had limits, including prohibiting felons from possession:

> We made it clear in <u>Heller</u> that our holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons and the mentally ill,' 'laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.' We repeat those assurances here.

<u>McDonald</u>, 561 U.S. at 786 (quoting <u>Heller</u>, 554 U.S. at 626-27).

Most recently in <u>Bruen</u>, the Supreme Court considered and struck down New York's regulatory licensing program that required applicants to prove that they had "proper cause" to carry a handgun in public. 142 S. Ct. at 2122. The Court held:

> We recognized that the Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense. In this case, petitioners and respondents agree that ordinary, law-abiding citizens have a similar right to carry handguns publicly for their self-defense. We too agree and now hold, consistent with <u>Heller</u> and <u>McDonald</u>, that the Second and Fourteenth Amendments

-4-

No. 84490-3-I/5

protect an individual's right to carry a handgun for self-defense outside the home.

142 S. Ct. at 2122.

The Court contrasted New York's permissive "may issue" concealed carry licensing regime with "'shall issue' jurisdictions, where authorities must issue concealed-carry licenses whenever applicants satisfy certain threshold requirements, without granting licensing officials discretion to deny licenses based on a perceived lack of need or suitability." Bruen, 142 S. Ct. at 2123-24. The Court explained that "shall issue" regulations are not affected by the Court's decision because those are designed to ensure that those possessing firearms "are, in fact, law-abiding, responsible citizens." Bruen, 142 S. Ct. at 2138 n.9. It also explained that nothing in Bruen should be interpreted to call into question the constitutionality of 43 states' "shall issue" regimes. Bruen, 142 S. Ct. at 2138 n.9.

Relevant here, Bruen did not overrule, or cast doubt, on the Court's recognition in Heller and McDonald that the Second Amendment did not preclude prohibitions on felons possessing firearms. The six-Justice majority opinion fully embraced the earlier decisions in Heller and McDonald that the Second and Fourteenth Amendments protect the right of "ordinary, law-abiding citizens to possess a handgun in the home for self-defense." Bruen, 142 S. Ct. at 2122 (emphasis added). Indeed, at least 11 times the majority referenced the Second Amendment right of "law-abiding" citizens. Bruen, 142 S. Ct. at 2122, 2125, 2133, 2134, 2138, 2150, 2156. Of the six justices in the majority, three wrote or joined in concurring opinions clarifying the scope of their decision. Justice Alito emphasized that:

-5-

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

> Today's decision therefore holds that a State may not enforce a law, like New York's Sullivan Law, that effectively prevents its law-abiding residents from carrying a gun for [self-defense].
>
> That is all we decide. Our holding decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun. Nor does it decide anything about the kinds of weapons that people may possess. Nor have we disturbed anything that we said in Heller or McDonald . . . about restrictions that may be imposed on the possession or carrying of guns.

Bruen, 142 S. Ct. at 2157 (Alito, J., concurring).

Similarly, Justice Kavanaugh, joined by Chief Justice Roberts, confirmed the prohibitions recognized in Heller and McDonald:

> as Heller and McDonald established and the Court today again explains, the Second Amendment "is neither a regulatory straightjacket nor a regulatory blank check." Ante, at 2133. Properly interpreted, the Second Amendment allows a "variety" of gun regulations. Heller, 554 U.S. at 636. As Justice Scalia wrote in his opinion for the Court in Heller, and Justice Alito reiterated in relevant part in the principal opinion in McDonald:
>
>> Like most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose. . . . [N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

No. 84490-3-I/7

Bruen, 142 S. Ct. at 2162 (Kavanaugh, J., concurring) (quoting Heller, 554 U.S. at 626-27 & n.26, McDonald, 561 U.S. at 786).[2]

Ross challenges RCW 9.41.040(1) which makes it illegal for a person convicted of a serious office to possess a firearm:

> (1)(a) A person, whether an adult or juvenile, is guilty of the crime of unlawful possession of a firearm in the first degree, if the person owns, accesses, has in the person's custody, control, or possession, or receives any firearm after having previously been convicted or found not guilty by reason of insanity in this state or elsewhere of any serious offense.
>
> (b) Unlawful possession of a firearm in the first degree is a class B felony punishable according to chapter 9A.20 RCW.

We hold that consistent with Heller, McDonald, and Bruen, the Second Amendment does not bar the state from prohibiting the possession of firearms by felons as it has done in RCW 9.41.040(1). RCW 9.41.040(1) is facially constitutional.

B

Recognizing that historically "the government could prohibit persons charged with crimes like taking up arms against the country from possessing firearms," Ross argues that because his underlying crime of second degree burglary was nonviolent, we should find RCW 9.41.040(1) unconstitutional as applied. We disagree for two reasons.

First, Ross's attempt to distinguish violent and nonviolent felons is of his own construct. Neither Bruen nor Heller frame the analysis in terms of violent versus nonviolent felons. Instead, both held that the Second Amendment protects the individual right of "law-abiding, responsible citizens" to possess firearms. Bruen, 142 S.

---

[2] In the dissent Justice Breyer, joined by Justices Kagan and Sotomayor, explained that "[l]ike Justice Kavanaugh, I understand the Court's opinion today to cast no doubt on that aspect [prohibition on the possession of firearms by felons] of Heller's holding." Bruen, 142 S. Ct. at 2189.

No. 84490-3-I/8

Ct. at 2131, Heller, 554 U.S. at 635 (emphasis added).  Again, the Bruen majority describes those who fall under the Second Amendment aegis as "law-abiding" citizens at least 11 times.  The Court found that New York's licensing regime was unconstitutional because "it prevent[ed] law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms."  Bruen, 142 S. Ct. at 2156 (emphasis added).  Moreover, in setting forth the proper framework to assess constitutionality under the Second Amendment, the Court explained that courts should analyze how and why historically relevant regulations "burden a law-abiding citizen's right to armed self-defense."  Bruen, 142 S. Ct. at 2133 (emphasis added).

Similarly, both Heller and McDonald specifically recognized the "longstanding prohibition on the possession of firearms by felons" as not violating the Second Amendment.  Heller, 554 U.S. at 626; McDonald, 561 U.S. at 786.  Neither opinion distinguished violent felons from nonviolent felons and Ross offers no authority in support of such a distinction.

A felon is "[s]omeone who has been convicted of a felony."  BLACK'S LAW DICTIONARY 762 (11th ed. 2019).  In Washington, a felony, under the unlawful possession of firearms statute, is defined as "any felony offense under the laws of this state or any federal or out-of-state offense comparable to a felony offense under the laws of this state."  RCW 9.41.010(17).  Burglary in the second degree is defined as a class B felony.  RCW 9A.52.030(2).  Thus, Ross was convicted of a felony and as such is not a "law-abiding" citizen.[3]

---

[3] Ross is, however, able to petition to have his firearm rights restored under RCW 9.41.041(2)-(4).

No. 84490-3-I/9

Second, the legislature has defined second degree burglary as a violent crime. The prohibition on possession of firearms under RCW 9.41.040(1)(a) applies to any person previously convicted of "any serious offense." A "serious offense" is defined by the same statute to include "[a]ny crime of violence." RCW 9.41.010(42)(a). And a "crime of violence" is defined to include burglary in the second degree. RCW 9.41.010(7)(a). When, as here, the language of the statute is unambiguous, we "must give effect to that plain meaning as an expression of legislative intent." Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). Ross offers no support for the proposition that the legislature did not intend to define burglary in the second degree as a serious offense and crime of violence.

Ross's as-applied challenge to RCW 9.41.040(1) fails.[4]

We affirm.

_Mann, J._

WE CONCUR:

_Birk, J._                    _Chung, J._

---

[4] Ross also makes a policy argument that limiting unlawful possession of a firearm to violent offenses can reduce racial disparity. Again, the legislature has made it unlawful for those convicted of "serious offenses" to possess firearms and has explicitly defined which crimes are "serious offenses." RCW 9.41.040(1), RCW 9.41.010(36). Policy arguments "are more properly addressed to the Legislature, not to the courts." Blomster v. Nordstrom, Inc., 103 Wn. App. 252, 258, 11 P.3d 883 (2000).