IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| THE STATE OF WASHINGTON, | No. 85809-2-I |
| Respondent, | |
| v. | PUBLISHED OPINION |
| SAMUEL LEON DUGAN, | |
| Appellant. | |

BOWMAN, A.C.J. — In September 2023, the trial court sentenced Samuel Leon Dugan to life without the possibility of parole (LWOP) under the Persistent Offender Accountability Act of the Sentencing Reform Act of 1981 (POAA), chapter 9.94A RCW. Dugan appeals, arguing that the POAA's "three strikes" law is unconstitutional as applied and that the trial court erred by violating his Sixth Amendment[1] right to have a jury determine the timing of his prior convictions under the POAA. Dugan also submits a statement of additional grounds for review (SAG), challenging his conviction and sentence. We affirm.

FACTS

In 2015, Dugan and L.L. began dating. Between May and mid-November 2017, L.L. worked as a prostitute in downtown Seattle. Dugan acted as L.L.'s pimp, providing her transportation, hotel rooms, advertising, phones, and a gun for protection from clients. Dugan set rules that he required L.L. to obey without

---

[1] U.S. CONST. amend. VI.

question.  He required L.L. to be in constant contact with him about her activities, her location, and who she was with.  And she had to give him all the proceeds from her prostitution work.  If L.L. violated the rules, Dugan assaulted and threatened her, including threatening to kill her.

In the late evening on November 10, 2017, Dugan threatened L.L. in a downtown Seattle hotel lobby.  Dugan was angry, among other things, because L.L. spoke to her father without his permission and was not earning enough money while he paid for her hotel rooms.  He told L.L. that if she did not leave with him, he would "bash [her] head in and break every bone in her face."  So, L.L. got in the passenger seat of Dugan's car, and he drove toward south Seattle.  On the way, Dugan pulled over the car and repeatedly struck L.L. with a closed fist on her left shoulder.  The attack caused L.L. significant pain and severe bruising.  Dugan later brought L.L. back to the hotel.

On November 16, 2017, the State charged Dugan with first degree promoting prostitution, felony harassment, second degree assault,[2] and third degree assault, all with domestic violence (DV) designations.  The State also alleged the crimes were part of an ongoing pattern of psychological, physical, or sexual abuse "manifested by multiple incidents over a prolonged period of time."  The State then amended the information twice.  In the third and final information filed October 14, 2019, the State added a charge of first degree unlawful possession of a firearm.

---

[2] The State alleged Dugan assaulted L.L. on May 13, 2017.  This incident is not at issue on appeal.

In September 2019, Dugan waived his right to a jury trial, and the case went to a bench trial in September and October. On November 20, 2019, the court found Dugan guilty of DV first degree promoting prostitution, DV misdemeanor harassment, and DV third degree assault and that all three counts were "acts committed as part of an ongoing pattern of physical or psychological abuse" of L.L. The court also found Dugan guilty of first degree unlawful possession of a firearm. It acquitted Dugan of DV second degree assault. On June 23, 2020, the trial court entered findings of fact and conclusions of law.

On September 15, 2023, the trial court sentenced Dugan. It found that the first degree promoting prostitution conviction is a "most serious offense" under the POAA.[3] And it found that Dugan had two prior convictions for "most serious offenses"—second degree assault in 2002 and first degree burglary in 2005. As a result, the court determined that Dugan is a persistent offender under the POAA and imposed a mandatory LWOP sentence for the first degree promoting prostitution conviction.[4] The court also imposed concurrent sentences of 51 months for the third degree assault conviction, 87 months for the first degree unlawful possession of a firearm conviction, and 364 days for the misdemeanor harassment conviction.

Dugan appeals.

---

[3] *See* RCW 9.94A.030(32).

[4] The trial court said it wanted the record to be "clear" that it "would not impose a life sentence if [it] had discretion."

ANALYSIS

Dugan argues the trial court erred by imposing an LWOP sentence under the POAA and by finding his prior convictions were "strikes" under the POAA in violation of his constitutional right to a jury. Dugan also submits a SAG, raising several other issues. We address each argument in turn.

1. POAA

Dugan argues the trial court erred by imposing an LWOP sentence because the three strikes law is unconstitutional as applied. And he argues the court erred by making findings about his prior convictions when he had a right to have a jury make those findings.

We review constitutional challenges de novo. *State v. Ross*, 28 Wn. App. 2d 644, 646, 537 P.3d 1114 (2023), *review denied*, 2 Wn.3d 1026, 544 P.3d 30 (2024). We presume statutes are constitutional and place the burden on the challenger to show unconstitutionality beyond a reasonable doubt. *State v. Hunley*, 175 Wn.2d 901, 908, 287 P.3d 584 (2012). "An as-applied challenge to a statute's constitutionality requires examination of the statute in the specific circumstances of the case." *Ross*, 28 Wn. App. 2d at 646.

A. LWOP Sentence

Dugan argues the trial court erred by sentencing him to LWOP because the POAA's three strikes law is unconstitutional. He contends the law amounts to cruel punishment under article I, section 14 of the Washington Constitution because it "is applied in a racially disproportionate and thus discriminatory manner" like the death penalty. We disagree.

4

Article I, section 14 of the Washington Constitution provides, "Excessive bail shall not be required, excessive fines imposed, nor cruel punishment inflicted." Our Supreme Court has repeatedly recognized that the Washington State Constitution's cruel punishment clause often provides greater protection than the Eighth Amendment to the United States Constitution. *State v. Gregory*, 192 Wn.2d 1, 15, 427 P.3d 621 (2018).

Under the POAA, a "persistent offender" is an offender convicted in Washington of "a most serious offense" and who has prior convictions of most serious offenses "on at least two separate occasions." RCW 9.94A.030(37)(a). Sentencing courts consider all prior adult convictions for most serious offenses as " 'strikes.' " *State v. Nelson*, 31 Wn. App. 2d 504, 512, 550 P.3d 529 (quoting *State v. Reynolds*, 2 Wn.3d 195, 200, 535 P.3d 427 (2023)), *review denied*, 3 Wn.3d 1030, 559 P.3d 496 (2024). When a defendant has been convicted of three strikes within the POAA's definition of a "persistent offender," the trial court "shall" sentence the defendant to LWOP. RCW 9.94A.570. The court has no discretion to impose any other sentence. *Nelson*, 31 Wn. App. 2d at 512.

Relying on *Gregory*, Dugan asserts that courts administer the POAA's three strikes law discriminatorily, violating the constitution's prohibition on cruel punishment. In *Gregory*, our Supreme Court held that Washington courts imposed the death penalty in an "arbitrary and racially biased manner," violating article I, section 14. 192 Wn.2d at 35. As a result, the court converted all death sentences to life imprisonment. *Id.* at 36.

5

Dugan, a Black man, points out that like the death penalty, the POAA three strikes law has a disproportionate impact on Black people. But as Division Two explained in *Nelson*, "imposition of an LWOP sentence under the POAA involves a different procedure than the imposition of the death penalty addressed in *Gregory*." 31 Wn. App. 2d at 515. Unlike the death sentence at issue in *Gregory*, sentencing courts do not administer the POAA case-by-case. *Id.* at 516. Instead, courts administer the POAA "the same way no matter who the defendant; *all* [persistent] offenders . . . will be sentenced to LWOP." *Id.* at 516-17. As a result, Division Two concluded that the appellant "has not shown that the POAA is administered in a racially disproportionate manner as in *Gregory*" and that the POAA is constitutional. *Id.* at 517. We have reached the same conclusion in several unpublished cases.[5]

Still, Dugan contends that *Nelson* was wrongly decided because it ignores the front-end discretionary arrest and charging decisions that contribute to courts imposing a disproportionate number of LWOP sentences on Black people. As we acknowledged in *State v. Kennon*, No. 80813-3-1, slip op. at 26 (Wash. Ct. App. Aug. 16, 2021) (unpublished), https://www.courts.wa.gov/opinions/pdf/ 808133.pdf, there is substantial evidence that the POAA applies to men of color

---

[5] *See, e.g.*, *State v. Kennon*, No. 80813-3-I, slip op. at 23-28 (Wash. Ct. App. Aug. 16, 2021) (unpublished), https://www.courts.wa.gov/opinions/pdf/808133.pdf; *State v. Legrone*, No. 85116-1-I, slip op. at 11-14 (Wash. Ct. App. Sept. 23, 2024) (unpublished), https://www.courts.wa.gov/opinions/pdf/851161.pdf; *State v. Freeman*, No. 85134-9-I, slip op. at 13-15 (Wash. Ct. App. May 27, 2025) (unpublished), https://www.courts.wa.gov/opinions/pdf/851349.pdf. We may cite unpublished opinions necessary for a reasoned decision. GR 14.1(c).

at alarmingly disproportionate rates.[6]  Unfortunately, this disproportionality results from systemic racial injustices throughout the criminal justice system.  *Id.*  Men of color are disproportionately stopped, arrested, charged, and convicted of crimes, which lead to a disproportionate number of Black men with three most serious offenses.[7]  *Id.*  While we acknowledge these systemic issues, we agree with the conclusion in *Nelson* that they do not show that the POAA is administered in a racially disproportionate manner as in *Gregory*.

We conclude that Dugan's LWOP sentence is not unconstitutional.

B.  Sixth Amendment Challenge

Dugan argues the trial court violated his Sixth Amendment right to a jury by making findings about the timing of his prior strike offenses.  He asserts that under *Erlinger v. United States*, 602 U.S. 821, 144 S. Ct. 1840, 219 L. Ed. 2d 451

---

[6] *See* WASH. SENT'G GUIDELINES COMM'N, TWO-STRIKES AND THREE-STRIKES: PERSISTENT OFFENDER SENTENCING IN WASHINGTON STATE THROUGH JUNE 2008, at 10 (Feb. 2009) (of the 314 persistent offenders sentenced under the POAA up to 2008, 127 were Black), https://cfc.wa.gov/sites/default/files/Publications/Persistent_Offender_asof20080630.pdf [https://perma.cc/7AFY-C7KH]; *see also* Florangela Davila, *State 'Three Strikes' Law Hits Blacks Disproportionately*, SEATTLE TIMES (Feb. 18, 2002) (Sentencing Guidelines Commission report shows that Black people "make up 3 percent of the statewide population but 37 percent of the state's three-strike lifers"), https://archive.seattletimes.com/archive/?date=20020218&slug=sentencing18m [https://perma.cc/B6B5-LT3A].

[7] *See, e.g.*, Davila, *supra* ("Young black males are more likely to be sentenced to prison; they are more likely to be sentenced and incarcerated for drug offenses; and they are more likely to be arrested for violent and property crimes than are their white counterparts."); *see also* ASHLEY NELLIS, SENT'G PROJECT, THE COLOR OF JUSTICE: RACIAL AND ETHNIC DISPARITY IN STATE PRISONS 10 (June 14, 2016) ("Still other research finds that prosecutorial charging decisions play out unequally when viewed by race, placing blacks at a disadvantage to whites.  Prosecutors are more likely to charge black defendants under state habitual offender laws than similarly situated white defendants."), https://www.sentencingproject.org/publications/color-of-justice-racial-and-ethnicdisparity-in-state-prisons-2016.pdf [https://perma.cc/8WM8-GW7X].

(2024), a jury needed to find that his prior convictions occurred on separate occasions.  We disagree.

The Sixth Amendment guarantees the accused the right to a jury trial.  In *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000),[8] the United States Supreme Court held, "*Other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."

Then, in *State v. Wheeler*, 145 Wn.2d 116, 117, 34 P.3d 799 (2001), our Supreme Court considered whether under *Apprendi*, prior convictions used to prove a defendant is a persistent offender must be submitted to a jury and proved beyond a reasonable doubt.  It held that there was no such requirement— where a sentence is increased under the POAA because of prior convictions, a jury need not find the existence of prior convictions.  *Id.* at 117, 120-21,123.  It explained that while the State generally must prove every element of a crime beyond a reasonable doubt, "traditional factors considered by a judge in determining the appropriate sentence, such as prior criminal history, are not elements of the crime."  *Id.* at 120.  So, "[a]ll that is required by the constitution and the statute is a sentencing hearing where the trial judge decides by a preponderance of the evidence whether the prior convictions exist."  *Id.* at 121.

Here, the State submitted certified records of Dugan's prior convictions, including the judgment and sentences.  From those documents, the trial judge

---

[8] Emphasis added.

8

determined by a preponderance of the evidence that Dugan's 2002 second degree assault conviction and 2005 first degree burglary conviction were "prior strike offenses." Under *Wheeler*, the trial court did not violate Dugan's Sixth Amendment right to a jury. *See* 145 Wn.2d at 121.

Dugan disagrees. Citing *Erlinger*, he contends that because there is a "timing aspect to the prior convictions," a jury needed to make those findings. But *Erlinger* does not support his argument.

In *Erlinger*, the defendant pleaded guilty to possession of a firearm in violation of 18 U.S.C. § 922(g). 602 U.S. at 825-26. Because the government also charged the defendant under the Armed Career Criminal Act of 1984 (ACCA), 18 U.S.C. § 924, he faced 15 years to life imprisonment if he had three prior convictions for violent felonies or serious drug offenses that were " 'committed on occasions different from one another.' " *Id.* at 825 (quoting 18 U.S.C. § 924(e)(1) (2012)). At a resentencing hearing, the government based its request for a 15-year sentence on burglaries that the defendant committed "within a span of days." *Id.* at 826-27. The defendant maintained that the burglaries did not occur on four separate occasions but during "a single criminal episode." *Id.* at 827. And he argued that a jury needed to determine the different-occasions inquiry because it "required an assessment of the facts surrounding those offenses." *Id.* The district court denied his request and found that the burglaries occurred on distinct occasions. *Id.*

The United States Supreme Court reversed, holding that whether the past offenses occurred on different occasions is a "fact-laden task" for a jury to

determine unanimously beyond a reasonable doubt. 602 U.S. at 834-35. The Court explained that whether the defendant committed the offenses on one occasion or separate occasions under the ACCA involves considerations like whether the crimes were committed close in time, how similar were the offenses' "purpose and character," and the proximity of the offenses' locations. *Id.* at 834. The Court said:

> Presented with evidence about the times, locations, purpose, and character of those crimes, a jury might have concluded that some or all occurred on different occasions. Or it might not have done so. All we can say for certain is that the sentencing court erred in taking that decision from a jury.

*Id.* at 835. The Court issued a narrow holding, stating, "While recognizing [the defendant] was entitled to have a jury resolve ACCA's occasions inquiry unanimously and beyond a reasonable doubt, we decide no more than that." *Id.*

Here, the sentencing court found that Dugan was a persistent offender under the POAA. As discussed, a persistent offender under the POAA must have prior convictions of "most serious offenses" on "at least two separate occasions." RCW 9.94A.030(37)(a). But unlike the ACCA's " 'committed on occasions different from one another' " inquiry in *Erlinger*, determining prior dates of conviction under the POAA is not a "fact-laden" task. *See* 602 U.S. at 825, 834 (quoting 18 U.S.C. § 924(e)(1)).

Instead, the court can identify a date of conviction in the judgment and sentence with no need to consider the conviction's underlying facts. *See In re Pers. Restraint of Adolf*, 170 Wn.2d 556, 566, 243 P.3d 540 (2010) (best evidence of a prior conviction is a certified copy of the judgment). As a result,

Dugan fails to show that the rationale in *Erlinger* applies here. And, as we recently stated in *State v. Anderson*, 31 Wn. App. 2d 668, 681, 552 P.3d 803 (2024),[9] "*Erlinger*'s holding is limited to resolving ACCA's occasions inquiry and does not overrule our state's well-established precedent in *Wheeler*" that a trial court can find prior convictions for purposes of the POAA.[10] *See Wheeler*, 145 Wn.2d at 121.

The trial court did not err by finding that Dugan's 2002 second degree assault conviction and 2005 first degree burglary conviction were prior strike offenses under the POAA.

2. SAG

In a SAG, Dugan argues the trial court committed several errors affecting his conviction and sentence. We address his arguments below.[11]

A. *Brady* Violation

Dugan argues that the State violated its obligations under *Brady*[12] by suppressing evidence about third party suspects. We disagree.

---

[9] *Review denied*, 3 Wn.3d 1034, 559 P.3d 1013 (2024).

[10] Division Two reached a similar conclusion in *State v. Frieday*, 33 Wn. App. 2d 719, 746-47, 565 P.3d 139, *review denied*, 5 Wn.3d 1006, 574 P.3d 539 (2025).

[11] We note that we do not address several of Dugan's SAGs under RAP 10.10(c). RAP 10.10(c) provides that we will not consider a SAG "if it does not inform the court of the nature and occurrence of alleged errors." And it states that we are "not obligated to search the record in support of claims made" in a SAG. *Id.* Dugan does not develop his argument or explain how the trial court erred when claiming that (1) the State violated his privacy rights under article I, section 7 of the Washington Constitution, (2) the trial court erred by improperly sealing orders and denying a motion for a bill of particulars, (3) an expert witness' testimony defining a slang term deprived him of a fair trial, and (4) newly discovered information and witnesses exist. So, we do not consider these issues under RAP 10.10.

[12] *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

Under *Brady*, the State has a duty to disclose all evidence in its possession favorable to the accused, even if the defendant did not request it. 373 U.S. at 87. To establish a *Brady* violation, a defendant must show (1) the evidence favors the accused because it is either exculpatory or impeaching, (2) the evidence was suppressed by the State either willfully or inadvertently, and (3) the evidence is material. *State v. Davila*, 184 Wn.2d 55, 69, 357 P.3d 636 (2015). Evidence is "material" under *Brady* if there is a reasonable probability that had the State disclosed the evidence to the defense, the result of the proceeding would have been different. *Id.* at 73.

Here, Dugan fails to identify what material evidence the State suppressed. He complains that the State "knew of Stewart and Houston's coercive and violent history but concealed their relevance"[13] and that "[e]vidence of other suspects was never meaningfully provided pretrial." He also asserts that Stewart and Houston had no-contact orders with L.L., which the State failed to disclose, and that the State suppressed evidence that Houston is a "third-party trafficker." But Dugan fails to support these conclusory assertions with meaningful argument or identify what specific information the State should have disclosed.

In any event, Dugan fails to show that any supposedly withheld evidence is material. Instead, he lists evidence related to Houston that the court ruled was "irrelevant" and complains that the court's ruling "fatally undermined the defense theory." But he does not show that there is a reasonable probability that the verdict would have been different if the State had disclosed certain evidence.

---

[13] Dugan asserts L.L. "gave statements that Marice Houston and Tannis Stewart were her pimps during the material charging period."

Dugan fails to establish a *Brady* violation.

B. Ineffective Assistance of Counsel

Dugan argues he received ineffective assistance of counsel when his attorney, among other things, failed to investigate third party suspects, stipulated to an element of constructive possession of the firearm, and failed to adequately impeach a witness. We disagree.

To demonstrate ineffective assistance of counsel, a defendant must show (1) defense counsel's representation was deficient and (2) the deficient representation prejudiced him. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). To establish prejudice, a defendant must show a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. *Id*. at 335. We do not address both prongs of the inquiry if the defendant makes an insufficient showing on one prong. *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726 (2007).

Here, Dugan makes several claims about how his counsel's representation was deficient. Even assuming those amount to deficient performance, Dugan fails to show prejudice. He argues only that

> [t]here is a substantial probability that had defense counsel investigated the third-party suspects, the evidence would undermine confidence in the outcome. The third-party suspect evidence provides reason to doubt [his] unlawful possession of a firearm conviction. . . . [L.L.] referenced that [someone else] gave her the pistol.

Dugan does not show that if counsel investigated other suspects, there is a reasonable probability that the court's verdict would have been different. So, he cannot establish an ineffective assistance of counsel claim.

13

C. <u>Invalid Warrant</u>

Dugan challenges a search warrant,[14] arguing that it included materially false statements and that the trial court erred by not conducting a *Franks*[15] hearing. He also argues that the warrant lacked particularity. We disagree.

We presume that an affidavit supporting a search warrant is valid. *State v. Atchley*, 142 Wn. App. 147, 157, 173 P.3d 323 (2007). Under *Franks*, in limited circumstances, a defendant "is entitled to challenge the truthfulness of factual statements made in an affidavit supporting a search warrant during a special evidentiary hearing." *Id.* To do so, the defendant must first make a

> "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause."

*Id.* (quoting *Franks*, 438 U.S. at 155-56).

Here, Dugan does not identify where he made the necessary preliminary showing that triggered a *Franks* hearing at trial, and we cannot locate it. Instead, he baldly asserts that the affidavits "contained materially false statements" and "omitted exculpatory context." He argues that certain affidavits misrepresented witness credibility and omitted reports of Houston's abuse. But Dugan does not reference any specific statements or explain how the affiants misrepresented relevant facts. As a result, he does not show that he was entitled to a *Franks* hearing.

---

[14] Dugan does not identify the warrant he is challenging.

[15] *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).

As for the warrant's particularity, both the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution require that a search warrant "describe with particularity the place to be searched and the persons or things to be seized." *State v. Tyson*, 33 Wn. App. 2d 627, 639, 564 P.3d 248, *review denied*, 4 Wn.3d 1036, 570 P.3d 713 (2025). The warrant must be specific enough to allow the searcher to reasonably identify the things authorized to be seized. *Id.* But here, Dugan does not explain how the warrant lacked particularity. So, his claim fails.

D. Denial of Motions to Proceed Pro Se and to Continue

Dugan argues the trial court erred by denying his motion to proceed pro se at trial and his request to continue sentencing. We disagree.

We review a trial court's decision on a defendant's request to proceed pro se for abuse of discretion. *State v. Curry*, 191 Wn.2d 475, 483, 423 P.3d 179 (2018). A trial court abuses its discretion if its decision is manifestly unreasonable, rests on facts unsupported by the record, or was reached by applying the wrong legal standard. *Id.* at 483-84. We give great deference to the trial court, as it is better equipped to consider requests to proceed pro se. *Id.* at 884-85. To exercise the right to self-representation, a defendant must unequivocally request to proceed pro se before a court permits them to do so. *Id.* at 482-83.

Here, it is unclear which trial court decision Dugan challenges. But the record shows there were several colloquies in 2018 between the court and Dugan about whether he wanted to represent himself to avoid further trial

15

continuances. And each time the trial court tried to determine whether Dugan wanted to proceed pro se, Dugan refused to give straightforward responses. The court found that Dugan was "being equivocal on whether he wants to represent himself" and ordered his attorneys to continue representing him. Dugan does not make any argument showing that his request was unequivocal or otherwise explain how the trial court erred. So, we conclude that the court did not abuse its discretion.

Dugan also challenges the trial court's denial of his request for a continuance to better prepare for sentencing. We review a court's denial of a motion to continue for manifest abuse of discretion. *State v. Woods*, 143 Wn.2d 561, 579, 23 P.3d 1046 (2001). Even where a court erroneously denied a continuance, we will reverse a conviction only if the defendant shows that the error was prejudicial. *State v. Tatum*, 74 Wn. App. 81, 86, 871 P.2d 1123 (1994).

Here, the court granted Dugan's request to became pro se in February 2020, after his 2019 convictions. Over the next three years, Dugan filed several pro se postconviction motions. Then, in September 2023, Dugan requested more time to prepare for sentencing. He argued that certain events and housing relocations in prison limited his access to legal resources. In response, the court recognized that Dugan had sufficient access to legal resources while he was pro se to research and file several postconviction motions. And, in any event, it noted that Dugan was facing a mandatory sentence under the POAA, so his additional legal research would be of limited value. The trial court's decision to deny Dugan's motion to continue was tenable.

### E. Due Process Violation

Dugan also asserts that his due process rights were violated because when he appeared pro se postconviction, he was denied access to legal resources "during critical pre-sentencing preparation." But Dugan did not argue below that he was denied access to legal resources in violation of his constitutional rights. And he does not argue that we should consider it for the first time on appeal. So, we decline to address that issue under RAP 2.5(a).

### F. Prosecutorial Misconduct

Dugan argues the prosecutor committed misconduct by, among other things, being inflammatory, misrepresenting a material witness, and misrepresenting records. We disagree.

In a prosecutorial misconduct claim, the defendant must prove that the prosecutor's conduct was both improper and prejudicial. *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). Once a defendant establishes that a prosecutor's statements are improper, we determine whether the defendant was prejudiced. *Id.* at 760. If the defendant objected at trial, the defendant must show that the prosecutor's misconduct resulted in prejudice that had a substantial likelihood of affecting the verdict. *Id.*

Here, even assuming the prosecutor's conduct was improper, Dugan does not explain how the conduct prejudiced him. So, he cannot establish his prosecutorial misconduct claim.

G. Sufficiency of the Evidence

Dugan argues that insufficient evidence supports his first degree unlawful possession of a firearm and first degree promoting prostitution convictions. We disagree.

We review challenges to a trial court's conclusions of law de novo. *State v. Roberts*, 5 Wn.3d 222, 237, 572 P.3d 1191 (2025). We defer to the trier of fact when resolving conflicting testimony and persuasiveness of the evidence. *Id.* And we will uphold the conviction if any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

i. First Degree Unlawful Possession of a Firearm

Dugan asserts there is insufficient evidence of his dominion and control over a firearm to support his unlawful possession conviction.[16] We disagree.

Under RCW 9.41.040(1)(a)(i), a person is guilty of first degree unlawful possession of a firearm "[i]f the person owns, accesses, has in the person's custody, control, or possession, or receives any firearm after having previously been convicted . . . of any serious offense." Possession may be actual or constructive. *State v. Chouinard*, 169 Wn. App. 895, 899, 282 P.3d 117 (2012). And the State can establish constructive possession by showing the defendant had dominion and control over the firearm. *Id.*

Here, the trial court found L.L.'s testimony credible that Dugan gave her a firearm after a client assaulted her. The court pointed to text messages where

---

[16] Dugan also argues there was no conclusive evidence that he knew about a firearm at the time of his arrest. But this is not an element of the crime. *See* RCW 9.41.040(1).

L.L. told Dugan she was leaving a firearm in the hotel room for him to retrieve and Dugan did not respond with confusion or deny that it was his. Those findings are enough to support the court's conclusion that Dugan knowingly owned a firearm or knowingly had a firearm in his possession or control.

ii. First Degree Promoting Prostitution

Dugan also argues that insufficient evidence supports his first degree promoting prostitution conviction. We disagree.

Under RCW 9A.88.070(1)(a), a person is guilty of promoting prostitution in the first degree if he or she "knowingly advances prostitution" by "compelling a person by threat or force to engage in prostitution or profits from prostitution which results from such threat or force." Here, the trial court found that Dugan acted as L.L.'s pimp, providing her transportation, hotel rooms, advertising, phones, and a firearm for her prostitution work, and that he demanded all her prostitution proceeds. Further, it found Dugan set rules that he required L.L. to obey, and if L.L. violated the rules, he threatened and assaulted her.

The court's findings are sufficient to support its conclusion that Dugan knowingly advanced prostitution by compelling L.L. by threat or force to engage in prostitution and then profited from that prostitution.

H. Cumulative Error

Finally, Dugan argues that cumulative error denied him a fair trial. The cumulative error doctrine applies when cumulative errors produce a fundamentally unfair trial. *Emery*, 174 Wn.2d at 766. Application of the doctrine is "limited to cases where there have been several trial errors." *State v.*

*Azevedo*, 31 Wn. App. 2d 70, 85-86, 547 P.3d 287 (2024). Dugan has not shown several errors, so he is not entitled to relief under the cumulative error doctrine.

We affirm Dugan's convictions and sentence.

_____, ACJ

WE CONCUR:

_____   _____